**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND**

TERRENCE EDWARD HAMMOCK,

    Plaintiff,

    v.                            Civil Action No.:  BAH-22-482

DR. ZOWIE BARNES,

    Defendant.

---

**MEMORANDUM OPINION**

Following this Court's Memorandum Opinion and Order granting in part and denying in part Defendants' Motion to Dismiss or for Summary Judgment (ECFs 41 and 42), the sole remaining Defendant, Dr. Zowie Barnes, filed a Motion for Summary Judgment.  ECF 54.  The Motion is opposed by self-represented Plaintiff Terrence Edward Hammock.  ECF 59.  No hearing is necessary.  *See* Local Rule 105.6 (D. Md. 2023).

Also pending is Defendant's Motion to Seal (ECF 55), and Plaintiff's Motions for Default Judgment (ECF 57), for Contempt (ECF 58), and for Representation (ECF 60).  Each of Plaintiff's Motions are opposed by Defendant Barnes.  ECFs 61–64.  For the reasons below, Defendant's Motion for Summary Judgment shall be granted, and the remaining pending motions denied.

## I.    BACKGROUND

Hammock asserts three claims regarding the medical care he received while he was incarcerated at the Baltimore County Detention Center ("BCDC").  This Court previously summarized his surviving claims as follows:

### A.    Hernia Care

In Count 5, Hammock asserts that he received inadequate follow-up medical treatment after he had surgery to repair a broken internal hernia filter.  When Hammock first arrived at BCDC in September 2019, he informed the medical staff that he had a painful hernia condition.  On November 23, 2019, two inmates came into Hammock's cell and kicked him in the stomach, breaking the internal filter for his hernia.  On February 5, 2020, he had surgery at the University of Maryland Medical Center ("UMMC") to remove the filter.  In another case that has now been resolved, Hammock alleged constitutional violations based on the alleged inadequacy of the medical treatment for this condition before the surgery and the alleged delay in scheduling the February 5, 2020 surgery.  *See Hammock v. Watts*, No. GJH-19-3575, (D. Md. May 24, 2021).

In the present Complaint, Hammock asserts that a piece of metal was left in his body following that surgery "because the University doctors said they couldn't get it out."  Compl. at 7.  Hammock alleges that even after the surgery, he continued to pass blood in his urine and stool.  Hammock wrote to Director Watts and Dr. Barnes about his continuing hernia problems, and in March 2020, Dr. Barnes told him that he would be referred for hernia surgery, but no action was taken.  On January 27, 2022, Dr. Barnes told him that he would be brought to the medical office for an examination and evaluation of his hernia, but he was never called for it.  As of Hammock's submission of the Complaint on February 18, 2022, he had not received the follow-up surgery.

***

### B.    Sciatica

Also in Count 5, Hammock alleges that Director Watts and Dr. Barnes have deliberately deprived him of medical care for sciatica pain in his legs caused by a bullet that is lodged in his lower back.  Hammock states that the sciatica condition caused a shooting pain through his legs that is so severe that he often cannot walk for days at a time and cannot eat, and that "all the generic medication" he has been given does not relieve the pain.  Compl. at 8.  Hammock asserts that Dr. Barnes has refused to provide him with an outside medical consultation or to designate him to reside in a medical unit.  Hammock also claims that while Dr. Barnes has directed that he should not be assigned to the top tier of the housing unit and that he should be placed only in a lower bunk, he has been assigned to the top tier of the housing unit.

### C.    Eye Injury

In Count 6, Hammock claims that on March 8, 2021, during an assault by his cellmate, he was hit in the left eye several times causing several broken bones. Hammock was sent to the eye clinic at Johns Hopkins Medical Center, where

the eye specialists informed him that the bones around his eye were broken and that he may need surgery to repair the damage.   These doctors provided Hammock with eye drops to address the internal bleeding in his eye.   Hammock asserts that during the approximately one year from that incident to the filing of the Complaint, he continued to have problems with his left eye, which he describes as "jumping" of his eye, seeing red, and constant pain when he wakes up.  *Id*. at 9.  Hammock alleges that Director Watts and Dr. Barnes are liable for constitutional violations because he sent them administrative complaints about this condition on Inmate Request Form #118, but they did nothing to address it.

ECF 41, at 4–6.

In her affidavit in support of the Motion for Summary Judgment, Dr. Barnes states that from October 1, 2019, to December 24, 2019, and from September 23, 2021, to December 16, 2021, she was on maternity leave from her position at PrimeCare Medical, Inc.  ECF 54-14, at 2 ¶ 3.  While she was out on maternity leave, other employees performed her usual duties.  *Id*.  She recalls that Hammock underwent an IVC filter surgery in February of 2020, but states that he did not require hernia surgery at any point during his incarceration at BCDC after that surgery.  *Id*. at 3, ¶ 7.

Further discussion of the care Hammock received while at BCDC occurs in the Analysis section of this opinion below.

## II.   NON-DISPOSITIVE MOTIONS

### A.   Motion to Seal

Defendant seeks to seal her Motion for Summary Judgment, Memorandum in Support, and all exhibits attached thereto because there are medical records included which contain "sensitive medical information."  ECF 55.  Local Rule 105.11 (D. Md. 2023), which governs the sealing of all documents filed in the record, states in relevant part: "[a]ny motion seeking the sealing of pleadings, motions, exhibits or other documents to be filed in the Court record shall include (a) proposed reasons supported by specific factual representations to justify the sealing and (b) an

explanation why alternatives to sealing would not provide sufficient protection."  The Rule balances the public's common law right to inspect and copy judicial records and documents, *see Nixon v. Warner Commc'ns, Inc*., 435 U.S. 589, 597 (1978), with competing interests that sometimes outweigh the public's right, *see In re Knight Publ'g Co*., 743 F.2d 231, 235 (4th Cir. 1984).  The common-law presumptive right of access can only be rebutted by showing that countervailing interests heavily outweigh the public interest in access.  *Doe v. Public Citizen*, 749 F.3d 246, 265–66 (4th Cir. 2014).

The public's right of access to dispositive motions and the exhibits filed within is protected to an even higher standard by the First Amendment.  *See Rushford v. New Yorker Magazine, Inc.,* 846 F.2d 249, 253 (4th Cir. 1988).  This right also "extends to a judicial opinion ruling on a summary judgment motion."  *Public Citizen*, 749 F.3d at 267.  The First Amendment's right of access "may be restricted only if closure is 'necessitated by a compelling government interest' and the denial of access is 'narrowly tailored to serve that interest.'"  *Id.* at 266 (citation omitted).  "[S]ensitive medical or personal identification information may be sealed," but not where "the scope of [the] request is too broad."  *Rock v. McHugh*, 819 F. Supp. 2d 456, 475 (D. Md. 2011).

Defendant's Motion is too extensive, seeking a seal on all components of the Motion and supporting documents.  Further, Hammock initiated this lawsuit and has himself disclosed most of the medical information contained in the records submitted by Defendant.  The Motion to Seal shall be denied.

### B.    Motions for Default Judgment and for Contempt of Court

In his Motion for Default Judgment (ECF 57), Hammock asserts that Defendant did not respond to the Complaint in compliance with this Court's Order of November 1, 2023, providing her with 28 days to file her dispositive motion.  Defendant Barnes filed her Motion for Summary

Judgment on November 27, 2023, one day prior to the deadline set by this Court.  ECF 54.  Under

Fed. R. Civ. Proc. 55(a) default may be entered "[w]hen a party against whom a judgment for

affirmative relief is sought has failed to plead or otherwise defend, and that failure is shown by

affidavit or otherwise."  Moreover, the failure to plead or defend does not automatically entitle a

plaintiff to entry of default judgment.  The decision to enter default is left to the discretion of this

Court.  *See Dow v. Jones*, 232 F. Supp. 2d 491, 494 (D. Md. 2002).  Entry of default judgment is

not favored and is reserved in cases where the adversary process has been halted by an

unresponsive party.  *See United States v. Shaffer Equip. Co.*, 11 F.3d 450, 453 (4th Cir. 1993).

The standard for default judgment has not been met; therefore, Hammock's Motion shall be

denied.

In his Motion for Contempt of Court, Hammock again alleges that Defendant did not file

her responsive pleading in a timely manner and notes that he did not receive a copy of her Motion

for Summary Judgment on or before the deadline for filing it.  ECF 58.  Defendant Barnes filed a

Motion to Dismiss on June 10, 2022 (ECF 20), which was granted in part and denied in part on

March 10, 2023 (ECFs 41 and 42).  Defendant Barnes then filed an Answer on March 24, 2023

(ECF 43); an Amended Answer on November 1, 2023 (ECF 52); and a Motion for Summary

Judgment on November 27, 2023 (ECF 54).  Nothing defense counsel have done in this case is

contumacious.  *See* Fed. R. Civ. P. 70(e) (party disobeying an order may be held in contempt).

The Motion shall be denied.

### C.      **Motion for Representation**

In his Motion for Representation, Hammock asserts he requires counsel because he is not

trained in the law, cannot negotiate, and cannot obtain discovery.  ECF 60.  A federal district court

judge's power to appoint counsel under 28 U.S.C. § 1915(e)(1) is a discretionary one and may be

considered where an indigent claimant presents exceptional circumstances. *See Cook v. Bounds*, 518 F.2d 779, 780 (4th Cir. 1975); *see also Branch v. Cole*, 686 F.2d 264, 266 (5th Cir. 1982). There is no absolute right to appointment of counsel; an indigent claimant must present "exceptional circumstances." *See Miller v. Simmons*, 814 F.2d 962, 966 (4th Cir. 1987). Exceptional circumstances exist where a "pro se litigant has a colorable claim but lacks the capacity to present it." *See Whisenant v. Yuam*, 739 F.2d 160, 163 (4th Cir. 1984), *abrogated on other grounds by Mallard v. U.S. Dist. Ct.*, 490 U.S. 296, 298 (1989) (holding that 28 U.S.C. § 1915 does not authorize compulsory appointment of counsel).   Exceptional circumstances include a litigant who "is barely able to read or write," *Whisenant*, 739 F.2d at 162, or clearly "has a colorable claim but lacks the capacity to present it," *Berry v. Gutierrez*, 587 F. Supp. 2d 717, 723 (E.D. Va. 2008).   Upon careful consideration of the motions and previous filings by Hammock, the Court finds that he has demonstrated the wherewithal to either articulate the legal and factual basis of his claims himself or secure meaningful assistance in doing so.   No exceptional circumstances exist that warrant the appointment of an attorney to represent Hammock under § 1915(e)(1), therefore his Motion shall be denied.

## III.   STANDARD OF REVIEW

Summary judgment is governed by Fed. R. Civ. P. 56(a) which provides that:

> The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law.

The Supreme Court has clarified that this does not mean that any factual dispute will defeat the motion:

> By its very terms, this standard provides that the mere existence of *some* alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no *genuine* issue of *material* fact.

*Anderson v. Liberty Lobby, Inc.*, 477 U. S. 242, 247–48 (1986) (emphasis in original).

"A party opposing a properly supported motion for summary judgment 'may not rest upon the mere allegations or denials of [his] pleadings,' but rather must 'set forth specific facts showing that there is a genuine issue for trial.'" *Bouchat v. Balt. Ravens Football Club, Inc.*, 346 F.3d 514, 522 (4th Cir. 2003) (alteration in original) (quoting Fed. R. Civ. P. 56(e)). The court should "view the evidence in the light most favorable to . . . the nonmovant, and draw all inferences in her favor without weighing the evidence or assessing the witness' credibility." *Dennis v. Columbia Colleton Med. Ctr., Inc.*, 290 F.3d 639, 645 (4th Cir. 2002). The Court must, however, also abide by the "affirmative obligation of the trial judge to prevent factually unsupported claims and defenses from proceeding to trial." *Bouchat*, 346 F.3d at 526 (internal quotation marks omitted) (quoting *Drewitt v. Pratt*, 999 F.2d 774, 778–79 (4th Cir. 1993), and citing *Celotex Corp. v. Catrett*, 477 U.S. 317, 323–24 (1986)).

## IV.   ANALYSIS

Defendant Barnes raises the defense of *res judicata* and claim-splitting in support of her argument that she is entitled to summary judgment in her favor. Hammock offers no argument against Defendant's assertion that his claims are precluded. ECF 59.

### A.      Res Judicata

*Res judicata*, also known as claim preclusion, is a legal doctrine that promotes judicial efficiency and the finality of decisions. *In re Microsoft Corp Antitrust Litig.*, 355 F.3d 322, 325 (4th Cir. 2004). Under the doctrine of *res judicata*, a final judgment on the merits in an earlier decision precludes the parties from relitigating issues that were raised or could have been raised during that action. *Pueschel v. United States*, 369 F.3d 345, 354 (4th Cir. 2004). This doctrine applies when there is: (1) a final judgment on the merits in a prior lawsuit; (2) an identity of cause

of action in both the earlier and later suits; and (3) an identity of parties or their privies in the two suits. *Id*. at 354–55. *Res judicata* must ordinarily be pleaded as an affirmative defense, but a court may raise the defense on its own motion if it is "on notice that it has previously decided the issue presented." *Arizona v. California*, 530 U.S. 392, 412 (2000); *accord Clodfelter v. Republic of Sudan*, 720 F.3d 199, 208–10 (4th Cir. 2013); *Eriline Co. S.A. v. Johnson*, 440 F.3d 648, 655 (4th Cir. 2006). Such an action is warranted based on one of the underlying purposes of *res judicata*, "avoidance of unnecessary judicial waste." *Arizona*, 530 U.S. at 412.

### i.  Hernia Care

With respect to Hammock's claim regarding his hernia, the injury he suffered, the surgery he underwent, and the issues that arose in the aftermath of the surgery, Barnes points to Civil Action GJH-19-3575 which was dismissed with prejudice after the parties reached a settlement. *See Hammock v. Watts, et al.*, Civ. No. GJH-19-3575 (D. Md. Oct. 28, 2021) (hereinafter "*Hammock I*"), ECF 55. In that case, Hammock alleged:

> Hammock has an abdominal hernia that was surgically repaired with a "filter" prior to his current incarceration. ECF No. 1 at 3. The assault by Whitehead and Mungo caused the filter to break. *Id*. Hammock was advised by a doctor at the detention center that the broken filter presented a danger to his life because of blood clots or because a piece of the broken filter could travel to his heart or brain. *Id*. at 4. According to the Complaint, on November 26, 2019, Hammock was taken to St. Joseph's Hospital in Towson, Maryland for assessment of the damaged filter after he complained of pain and passing blood in his urine and stool. *Id*. Two days later, Hammock was discharged to the detention center and advised that surgical repair of the filter would need to be scheduled at the University of Maryland hospital because that is where the original hernia surgery was done. *Id*.
>
> In their Expedited Response, Defendants explained that Hammock was admitted to St. Joseph's Medical Center on November 28, 2019, ECF No. 16 at 1, although the attached documents state that he was admitted on November 27, 2019, *see* ECF No. 16-3 at 42–43, 144. Hammock was discharged from St. Joseph's on November 28, 2019, with instructions to schedule an appointment with the University of Maryland Medical Center ("UMMC") for surgery. *See id*. at 44, 144, 192.

The BCDC medical staff left three messages for the UMMC Interventional Radiology Department on November 28, 2019. *Id.* at 44. Additional attempts to contact UMMC on Hammock's behalf were made on at least December 2, 5, 12, and 19, 2019. *Id.* at 47, 52, 55–57. The notes reflect that the UMMC doctor is "scheduled out to end of February" but "[t]hey are trying to work out an appointment for January 2020." *Id.* at 56. On or before December 23, 2019, an appointment was scheduled for Wednesday, February 5, 2020. *Id.* at 59. Hammock had the surgery as scheduled and returned to the detention center on February 6, 2020. *Id.* at 84, 146, 196. Defendants assert that any delay in scheduling Hammock for the needed surgery was due to UMMC's scheduling delay. ECF No. 16 at 1.

In his Opposition to Defendants' Expedited Response, Hammock acknowledged that he received the required surgery three months after the assault, but stated he suffered in pain while waiting for the surgery because he was provided "medication that is so generic that it do[es] nothing for my pain." ECF No. 18 at 2. He additionally claimed that the doctor told him they had to leave a small piece of the filter in his body because it was surrounded by tissue and that it could cause bleeding. *Id.* He maintained that he is still in pain and still experiences blood in his urine. *Id.* He also claimed that he has only been given "generic medication" for his pain that does not work. *Id.* at 2–3. Hammock asserted that the delay before his surgery as well as the failure to treat his pain during that three-month wait violated his Eighth Amendment rights. *Id.*

*Hammock I*, ECF 44, at 7–8 (May 24, 2021 Mem. Op.). This Court granted summary judgment[1] in favor of Defendants Gail Watts, Sgt. Pilbulsiri, and Mariana Aka on Hammock's Fourteenth Amendment claim regarding the medical care he received in connection with the damage to his internal filter for his hernia, leaving intact the claim against the medical defendants. *Id.* at 15. After first noting that Hammock had generally stated a claim regarding a three-month delay in providing his surgery, *id.* at 12, this Court observed:

Here, Hammock has not shown Defendants or others at the detention center disregarded his medical needs with respect to the surgery. While there was a

---

[1] The Court's memorandum opinion concludes that "Hammock's Fourteenth Amendment claim of deliberate difference for medical care is dismissed." *Hammock I*, ECF 44, at 15. The context, however, that this claim was disposed of on summary judgment pursuant to Fed. Rs. Civ. P. 12(d) and 56, rather than dismissed pursuant to Fed. R. Civ. P. 12(b)(6). *See id.* at 13–14 (identifying "undisputed evidence" provided by Defendants and noting that "Hammock has not disputed this evidence or argued that additional discovery is necessary in order to be able to contest it").

three-month delay until his surgery could be performed, Defendants have
provided undisputed evidence showing the delay was caused by UMMC.
Indeed, Hammock's medical records show detention center staff's repeated
efforts to schedule his surgery and even to schedule an earlier appointment. *See*
ECF No. 16-3 at 47, 52, 55–57; *see id.* at 56 ("Dr. is scheduled out to end of
February. They are trying to work out an appointment for January 2020.").
Hammock has not disputed this evidence or argued that additional discovery is
necessary in order to be able to contest it.

Additionally, Hammock has not shown Defendants were deliberately indifferent
to his pain in the interim. While he complains that he was only given "generic
medication" that does not work, allegations that medical care is "inadequate," or
"[d]isagreements between an inmate and a physician over the inmate's proper
medical care," without more, do not rise to the level of conduct prohibited under
the Eighth Amendment. *Wright v. Collins*, 766 F.2d 841, 849 (4th Cir. 1985);
*see also cf. Griffin*, 837 F. App'x at 171 (rejecting this argument where the
plaintiff received "no treatment at all" rather than inadequate treatment)
(emphasis in original).

Moreover, "[w]hether and how pain associated with medical treatment should
be mitigated is for doctors to decide free from judicial interference, except in the
most extreme situations." *Williams v. Ulep*, No. CIV.A.3:06CV730, 2008 WL
5459776, at *3 (E.D. Va. Mar. 17, 2008), *aff'd*, 283 F. App'x 106 (4th Cir. 2008)
(quoting *Snipes v. DeTella*, 95 F.3d 586, 592 (7th Cir. 1996)); *see also Dicks v.
Bishop*, No. CV GLR-17-2554, 2018 WL 3996055, at *6 (D. Md. Aug. 20, 2018)
("To the extent Dicks argues his pain medication is ineffective, evidence of
unsuccessful medical treatment, such as the inability to reduce pain, is
insufficient to establish deliberate indifference."); *McCall v. Bodiford*, No.
215CV01011TLWMGB, 2016 WL 4498462, at *12 (D.S.C. June 15, 2016),
*report and recommendation adopted*, No. 215CV01011TLWMGB, 2016 WL
4492802 (D.S.C. Aug. 26, 2016) ("Many courts have recognized that an
inmate's disagreement with the type and strength of pain medication he is
prescribed does not amount to deliberate indifference."). Accordingly,
Hammock's Fourteenth Amendment claim of deliberate indifference to his need
for medical care is dismissed.

*Id.* at 13–15.  Summary judgment was denied as to Hammock's claim that correctional staff at

BCDC failed to protect him from the violent assault he suffered at the hands of two other inmates.

*Id.* at 20–21.  On October 28, 2021, this Court entered an Order dismissing the case with prejudice

after the parties reached a settlement.  *Hammock I*, ECF 55 (Order dismissing case with prejudice),

*see also* ECF 53 (Notice of voluntary dismissal).

While Defendant Barnes admits she was not a party to the lawsuit in *Hammock I*, she argues that the claim against her here is nonetheless barred by *res judicata* because it is clear from the context of Hammock's claim here—that Dr. Barnes has been deliberately indifferent to his needs since 2019—that the detention center "doctor" he refers to in *Hammock I* is Dr. Barnes. This, in Defendant's view, establishes the necessary privity of the parties involved in the two lawsuits. ECF 54-1, at 25. The Court agrees that there is privity between the defendants in *Hammock I* and Dr. Barnes.

Additionally, Hammock's claim in *Hammock I*, like his claim in this case, concerns damage to his internal hernia filter on November 23, 2019, and the medical care he received for it. In *Hammock I*, he alleged that he complained daily about blood in his stool, urine, and vomit, but the nurses would not do anything about it. *Hammock I*, ECF 1, at 4. In the instant case, Hammock alleged he had blood in his stool and urine before and after his surgery. ECF 1, at 7. Additionally, he complains in this case that the pain medication he was provided was ineffective, just as he did in *Hammock I*. ECF 1, at 8; *Hammock I*, ECF 1, at 4; *Hammock I*, ECF 18, at 2. Thus, the causes of action in each lawsuit are the same.

Lastly, there was a valid final judgment issued in *Hammock I* concerning his claim about the care he received for his hernia injury. This Court granted summary judgment in favor of the medical care professionals in *Hammock I*. Hammock did not appeal the Court's decision; therefore, it is a valid final judgment and Hammock's claim regarding his hernia is precluded by *res judicata* and must be dismissed. *See Adkins v. Allstate Ins. Co.*, 729 F.2d 974, 976 (4th Cir. 1984) (affirming grant of summary judgment on *res judicata* grounds where plaintiff did not appeal the prior judgment and instead instituted a second suit).

ii.     **Eye Injury**

In Civil Action DLB-21-796, Hammock sued Gail Watts, Sergeant Anthony Dupree, Officer Kevin Watson, Sergeant Travis Bond, Officer Henry Westcott, and Officer Phillip Andoh for failing to protect him from a violent assault by his cellmate and for deliberate indifference to his serious medical needs. *Hammock v. Watts, et al.*, Civ. No. DLB-21-796 (D. Md. 2021 filed Mar. 26, 2021) (hereinafter "*Hammock II*"), ECF 1.   Hammock based his deliberate indifference claim on his allegation that he sustained a serious injury to his eye during the assault by his cellmate, but the defendants would not secure medical attention for him. *See Hammock II*, ECF 1, at 3.   In a Memorandum dated November 19, 2021, this Court granted summary judgment in favor of the BCDC medical staff, referencing a prior Memorandum Opinion denying injunctive relief. *Hammock II*, ECF 47, at 10.   In that prior Memorandum Opinion denying injunctive relief, issued on September 23, 2021, this Court noted:

> The parties agree that Hammock was involved in a fight with his cellmate at the Baltimore County Detention Center (BCDC) on March 8, 2021. ECF 1, at 2; ECF 21-1, at 1. The medical record prepared at 10:15 a.m., the time Hammock arrived at the medical unit, indicates that he had a "minor scratch" at the "left hand corner of his eye" with "no swelling, or bleeding noted." ECF 21-1, at 1. Hammock disputes this account and claims that immediately following the assault, his eye was swollen shut and his eye and his nose were bleeding. ECF 22, at 1. A medical note documenting Hammock's return to the medical unit at 1:10 p.m. describes Hammock's wounds as "periorbital swelling/bruise and left nasal bleeding." ECF 21-1, at 2. At that time, it was decided that Hammock should be sent to the Johns Hopkins Hospital Wilmer Eye Clinic "via non emergent transportation for further evaluation." *Id*. Hammock does not dispute that he was sent to Wilmer for evaluation of his eye. ECF 22, at 1. Hammock was discharged from the Wilmer Eye Clinic Emergency Room on March 9, 2021 at 2:40 a.m., after he was diagnosed with a closed fracture of the left eye orbit. ECF 21-1, at 2.
>
> On March 10, 2021, Hammock was taken to Wilmer for a follow-up appointment. ECF 21-1, at 2. When Hammock returned to BCDC, he requested eyeglasses. *Id*. The nurse practitioner at BCDC who saw Hammock noted that Wilmer had reported that Hammock's vision was stable, his intra-ocular pressure was "under control" and he had been diagnosed with microhyphema.

*Id*. Wilmer's treatment plan was for Hammock to continue to take prednisone
for four days and to administer eye drops to his left eye twice per day. *Id*.
Hammock's assertion that providers at Wilmer told him he needed glasses is
unsupported by any objective evidence. *See* ECF 22, at 3 ("John[s] Hopkin[s]
Doctors said I need glasses."). Nor has Hammock provided any support for his
assertion that he was told he needed eye surgery. *Id*. at 1.

On March 16, 2021, Hammock again returned to the Wilmer Eye Clinic for a
follow-up evaluation. ECF 21-1, at 3. At that time Hammock's left eye was no
longer swollen, and he was told to discontinue use of the eye drops he was given.
*Id.* Hammock reported to BCDC medical staff that he was still experiencing pain
in his eye, which he rated a 6 on a scale of 1 to 10. *Id*.

On March 18, 2021, Hammock reported to BCDC's medical unit with
complaints of swelling in his left eyelid. ECF 21-1, at 4. Hammock was
diagnosed with pink eye and eye drops were ordered to treat it. *Id*.

On April 5, 2021, Hammock complained to BCDC medical staff that his left eye
was painful. ECF 21-1, at 4. Medical staff noted Hammock was in no acute
distress and diagnosed allergic conjunctivitis as the cause for his discomfort. *Id*.
He was prescribed an antihistamine and advised to apply cold compresses to his
eyes two to three times a day. *Id*. at 5.

According to medical reports dated June 29, July 16, July 22, and August 4,
2021, Hammock did not report any complaints related to his left eye. ECF 21-1,
at 7–8. Hammock takes issue with these records, stating that on August 8, 2021
he reported to BCDC medical staff that he was "seeing red" and was
experiencing pain in his left eye, but they did nothing.  ECF 22, at 3.

*Hammock II*, ECF 31 at 2–4.  Injunctive relief was denied because Hammock failed to demonstrate

a likelihood of success on the merits of his medical claim.  *Id*. at 5.  This Court reasoned that:

Indisputably, Hammock's orbital fracture is a serious medical need which
satisfies the objective prong of an Eighth Amendment claim.  However, the
BCDC medical staff responded reasonably to address Hammock's injury.  The
medical staff sent him to a world-renowned eye clinic where he was assessed
and given medication.  While Hammock may believe that he needs glasses and
surgery to treat his injury, there is no objective evidence that BCDC staff have
been informed that he needs either glasses or surgery and have ignored those
needs.  Where, as here, defendants have taken the steps to ensure the serious
medical need is treated and the plaintiff simply disagrees about what treatment
he should have received, the plaintiff has not asserted a constitutional claim.  *See*
*Scinto v. Stansberry*, 841 F.3d 219, 225 (4th Cir. 2016) ("Deliberate indifference
is more than mere negligence, but less than acts or omissions done for the very
purpose of causing harm or with knowledge that harm will result.").

> Because Hammock cannot prove a likelihood of success on the merits of his claim and because the evidence indicates he has received adequate medical treatment, the Court will not issue a preliminary injunction.

*Id*. at 6.  In granting summary judgment to the defendants on the medical claim, the Court relied on its prior reasoning because, "[s]ince the Court's denial of the preliminary injunction, Hammock has not presented any evidence to change the analysis."  *Hammock II*, ECF 47, at 10.  "Thus, there [was] no genuine dispute of material fact as to whether the defendants have been deliberately indifferent to Hammock's serious medical needs."  *Id.*

On September 19, 2022, the Court granted summary judgment to Defendant Officer Phillip Andoh on Hammock's claim that Officer Andoh failed to protect Hammock from the attack by his cellmate that led to his eye injury in violation of his constitutional rights.  *See* ECF 74.  Hammock appealed this decision to the Fourth Circuit Court of Appeals.  *Hammock II*, ECF 76.  On January 3, 2024, the Fourth Circuit issued an opinion vacating the Court's Order of September 19, 2022. *Hammock II*, ECF 80.  The case was remanded for this Court's consideration of Hammock's failure to protect claim in light of the appellate court's opinion in *Short v. Hartman*, 87 F.4th 593, 608–09 (4th Cir. 2023), applying the objective standard outlined by the Supreme Court in *Kingsley v. Hendrickson*, 576 U.S. 389, 396-97 (2015).  *See Hammock II*, ECF 80-1, at 3.  The judgment regarding Hammock's medical care for his eye injury remained undisturbed.

Dr. Barnes was not a party to *Hammock II* but is nevertheless in privity with the defendant in that case.  "There are three generally recognized categories of non-parties who will be considered in privity with a party to the prior action and who will therefore be bound by a prior adjudication: (1) a non-party who controls the original action; (2) a successor-in-interest to a prior party; and (3) a non-party whose interests were adequately represented by a party to the original action."  *Martin v. Am. Bancorp. Ret. Plan*, 407 F.3d 643, 651 (4th Cir. 2005).  Dr. Barnes meets

these requirements because the claim asserted by Hammock regarding his eye implicated her actions in caring for the injury, and her interests were adequately represented by the defendant there.  The evidence produced in *Hammock II* is the same evidence relied upon here to establish that the medical care Hammock received passes constitutional muster.  *See* ECF 54-9, at 37–41; *Hammock II*, ECF 21-1, at 1–8; *Hammock II,* ECF 23-4, at 1–2.  Further, the identity of the cause of action prong is also met.  "The determination of whether two suits arise out of the same cause of action . . . does not turn on whether the claims asserted are identical."  *Pueschel*, 369 F.3d at 355.  "Rather, it turns on whether the suits and the claims asserted therein 'arise out of the same transaction or series of transactions or the same core of operative facts.'"  *Id.* (internal citations omitted in original) (quoting *In re Varat Enters., Inc*., 81 F.3d 1310, 1316 (4th Cir. 1996)).

That leaves the question of whether the Court's prior grant of summary judgment on Hammock's claim for medical care he received for his eye, which was an interlocutory order at the time it was entered, now constitutes a final order on the merits order for *res judicata* purposes.[2] As noted, the Court granted summary judgment on the medical claim on November 19, 2021. *Hammock II*, ECFs 47, 48.  Hammock did not appeal that order—he only appealed the entry of summary judgment on the failure-to-protect claim.[3]  *See Hammock II*, ECF 76 (notice of appeal of only ECFs 74 (memorandum opinion) and 75 (order)).  Accordingly, the Fourth Circuit

---

[2] Courts have held that "final" has different meanings in the context of issue and claim preclusion as opposed to in the context of appellate jurisdiction pursuant to 28 U.S.C. § 1291.  *See United States v. McGann*, 951 F. Supp. 372, 382 (E.D.N.Y. 1997) (collecting cases); *Alexander v. Chicago Park Dist.*, 773 F.2d 850, 855 (7th Cir. 1985) (same).

[3] Hammock could have appealed the earlier order at the time he appealed the September 19, 2022, order.  *See Dupree v. Younger*, 598 U.S. 729, 734 (2023) ("[T]he 'general rule is that a party is entitled to a single appeal, to be deferred until final judgment has been entered, in which claims of district court error at any stage of the litigation may be ventilated.'" (quoting *Quackenbush v. Allstate Ins. Co.*, 517 U.S. 706, 712 (1996))).

remanded only the failure-to-protect claim to this Court, and the Court may not further address the medical claim.[4]

"For purposes of *res judicata,* a summary judgment has always been considered a final disposition on the merits." *Adkins*, 729 F.2d at 976 n.3 (citations omitted). Where the summary judgment "ruling hinged on a quintessential merits decision: whether the undisputed facts established all the elements" of a plaintiff's claim, the judgment is a final one for purposes of *res judicata*. *Brownback v. King*, 592 U.S. 209, 216 (2021). This is true even where the ruling concerns only some claims because, as noted, *res judicata* precludes relitigation of a claim that was either actually raised or could have been raised where there was a final judgment on the merits *of the claim asserted*. *See Lair v. Oglesby*, 14 F.3d 15, 17 n.2 (8th Cir. 1993) ("Although we do not reach the res judicata question, we observe that res judicata can apply to prevent reassertion of dismissed claims, even though there remain live claims in the same litigation."); *Bullen v. De Bretteville*, 239 F.2d 824, 829 (9th Cir. 1956) ("A judgment may be final as to some matters in litigation, although the litigation continues as to other matters." (quoting Restatement of Judgments § 41 comment c)), *overruled on other grounds by Lacey v. Maricopa Cnty.*, 693 F.3d 896 (9th Cir. 2012); *see also* Restatement (Second) of Judgments § 13 comment e (1982) (judgment may be final as to some claims while litigation of other claims continues). Indeed, the Fourth Circuit has held that an order granting summary judgment on specific claims was a final order on the merits of those claims. *See Saudi v. V. Ship Switzerland, S.A.*, 93 F. App'x 516, 520 (4th Cir. 2004).

---

[4] On remand in *Hammock II*, only the failure-to-protect claim is within the scope of the Court's power to address. *See S. Atl. Ltd. P'ship of Tennessee, LP v. Riese*, 356 F.3d 576, 584 (4th Cir. 2004) ("Under the mandate rule, a district court cannot reconsider issues the parties failed to raise on appeal . . . ." (citing *United States v. Bell*, 5 F.3d 64, 66 (4th Cir. 1993))).

Under federal *res judicata* principles, a judgment on only some claims is final and has claim-preclusive effect even where other claims continue to be litigated on remand after appeal. *See Merrimack St. Garage, Inc. v. Gen. Motors Corp.*, 667 F. Supp. 41, 44 (D.N.H. 1987) (collecting cases for the proposition that "determination of a cause of action is final and binding as to matters affirmed by a court of appeals regardless that litigation might continue on some limited matters directly related thereto").  The same principle holds true for a judgment on claims not appealed.  *See Procter & Gamble Co. v. Haugen*, 158 F. Supp. 2d 1286, 1297 n.9 (D. Utah 2001) (agreeing "that the fact that a case is remanded for further proceedings does not render res judicata inapplicable to unappealed portions of the judgment").  "If an appeal is taken from only part of the judgment, the remaining part is *res judicata,* and the vacation of the portion appealed from and remand of the case for further proceedings does not revive the trial court['s] jurisdiction of the unappealed portion of the judgment." *Laborer's Int'l Union of North Am. v. Foster Wheeler Corp.,* 26 F.3d 375, 397 n.24 (3d Cir. 1994).

The order granting summary judgment to defendants on the medical claim, which Hammock did not appeal, is a final order on the merits.  As in *Brownback*, this Court issued a decision that the undisputed facts did not support Hammock's constitutional claim about the medical care he received after his eye injury. *See Hammock II*, ECF 47, at 10.  Hammock did not appeal that decision, and the fact that another claim in *Hammock II* proceeds does not change the *res judicata* effect of the summary judgment ruling on the medical claim.  Hammock's attempt to raise the same claim for which defendants were granted summary judgment thwarts the purpose of the doctrine itself.  *Res judicata* "has found its way into every system of jurisprudence, not only from its obvious fitness and propriety, but because without it, an end could never be put to litigation." *San Remo Hotel, L.P. v. City and County of San Francisco*, 545 U.S. 323, 336-37

17

(2005) (internal quotation marks omitted).  Accordingly, the claim against Dr. Barnes regarding Hammock's eye injury is barred by *res judicata*.

### B.     Claim Splitting

Defendant asserts that Hammock's assertion of the claim that Dr. Barnes failed to provide constitutionally adequate medical care for his chronic pain from sciatica is barred by the doctrine of claim-splitting.  ECF 54-1, at 29–30.  Specifically, Defendant asserts that Hammock could have but did not raise this claim in the complaint filed in *Hammock II* regarding his eye injury.  *Id.* Defendant notes that Hammock's claim regarding sciatica pre-dates his claim regarding his eye injury, making it possible for him to raise it in *Hammock II*.  *Id.* at 29.

"Like res judicata, claim splitting 'prohibits a plaintiff from prosecuting its case piecemeal, and requires that all claims arising out of a single wrong be presented in one action.'" *Sensormatic Sec. Corp. v. Sensormatic Elecs. Corp.*, 452 F. Supp. 2d 621, 626 (D. Md. 2006), *aff'd,* 273 F. App'x 256 (4th Cir. 2008) (quoting *Myers v. Colgate–Palmolive Co.,* 102 F. Supp. 2d 1208, 1224 (D. Kan. 2000)).  "Thus, when a suit is pending in federal court, a plaintiff has no right to assert another action 'on the same subject in the same court, against the same defendant at the same time.'" *Id.* (quoting *Curtis v. Citibank, N.A.,* 226 F.3d 133, 138–39 (2d Cir. 2000)).  "This defense against claim-splitting, however, can be relinquished by a defendant either explicitly or implicitly." *Lee v. Norfolk S. Ry. Co.*, 187 F. Supp. 3d 623, 629 (W.D.N.C.) (ultimately holding defendants had waived the claim-splitting defense by expressly agreeing in an earlier suit that one of plaintiff's claims could be split and by failing to raise it promptly), *aff'd,* 670 F. App'x 777 (4th Cir. 2016).  "The Fourth Circuit has specifically prohibited a 'wait and see' strategy," meaning "a party with knowledge of split claim litigation must promptly raise the issue 'while both proceedings are pending.'" *Id.* at 630 (quoting *Lee v. Norfolk S. Ry. Co.*, 802 F.3d 626, 636 (4th Cir. 2015)).

The final decision in *Hammock II* was issued on September 19, 2022. *Hammock II*, ECFs 74 and 75. Dr. Barnes filed her first motion to dismiss in this case on June 10, 2022. ECF 20. She did not raise a defense of claim splitting in that motion; rather, she simply alleged that Hammock's correspondence docketed at ECF 7 amounted to an amended complaint pursuant to the Case Management Order and moved to dismiss for failure to state a claim and for failure to comply with Maryland's Health Care Malpractice Claims Act. *See* ECF 20, at 4–20. This Court rejected that argument on March 10, 2023, and required Dr. Barnes to address Hammock's claims. ECF 41, at 8–9; ECF 42. Dr. Barnes answered the complaint on March 24, 2023, and did not assert a claim-splitting defense. *See* ECF 43. The currently pending Motion for Summary Judgment was filed on November 27, 2023. ECF 54. Thus, to the extent that Dr. Barnes has waived the claim-splitting defense, this Court will reach the merits of Hammock's claim regarding sciatica.

### C.     Fourteenth Amendment Claim (Sciatica)

For convicted prisoners, the Eighth Amendment's prohibition on cruel and unusual punishment protects them from "unnecessary and wanton infliction of pain." *Gregg v. Georgia*, 428 U.S. 153, 173 (1976) (citations omitted). In order to state an Eighth Amendment claim arising from inadequate medical care, a prisoner must demonstrate that the actions of the defendants or their failure to act amounted to deliberate indifference to a serious medical need. *See Estelle v. Gamble*, 429 U.S. 97, 106 (1976).

The Due Process Clause of the Fourteenth Amendment protects the rights of pretrial detainees to receive adequate medical care. *Brown v. Harris*, 240 F.3d 383, 388 (4th Cir. 2001) (stating that "the Due Process Clause of the Fourteenth Amendment, rather than the Eighth Amendment, mandates the provision of medical care" to pretrial detainees "who require it")

(citation omitted)).  Pretrial detainees "retain at least those constitutional rights [held] by convicted prisoners."  *Bell v. Wolfish*, 441 U.S. 520, 545 (1979); *see Patten v. Nichols*, 274 F.3d 829, 834 (4th Cir. 2001).  While the Fourth Circuit recognized that a pretrial detainee's protections under the Constitution could arguably be "greater" than those afforded to convicted prisoners, it historically adopted the deliberate indifference standard applicable under the Eighth Amendment for pretrial detainees.  *Hill v. Nicodemus*, 979 F.2d 987, 991 (4th Cir. 1992).  Since *Hill*, however, the United States Supreme Court has called into question the equivalence between the standards applied to claims by pretrial detainees and those applied to claims by post-conviction inmates.

In *Kingsley v. Hendrickson*, 576 U.S. 389 (2015), the Court held that, unlike the standard applied to post-conviction detainees' excessive force claims under the Eighth Amendment, the standard for pretrial detainees' excessive force claims under the Fourteenth Amendment includes no subjective component.  *Id.* at 2472–73.  Several circuits have extended this reasoning to hold that the standard for pretrial detainees' claims of inadequate medical care under the Fourteenth Amendment should likewise not include a subjective component.  *See, e.g.*, *Darnell v. Pineiro*, 849 F.3d 17, 35 (2nd Cir. 2017); *Miranda v. Cty. of Lake*, 900 F.3d 335, 352 (7th Cir. 2018); *Gordon v. Cty. of Orange*, 888 F.3d 1118, 1124–25 (9th Cir. 2018)).

In *Short v. Harman*, the Fourth Circuit joined with its sister circuits and held that the *Kingsley* objective standard for Fourteenth Amendment claims "protects pretrial detainees from 'governmental action' that is not 'rationally related to a legitimate nonpunitive governmental purpose' or that is 'excessive in relation to that purpose.'"  87 F.4th 593, 608–09 (4th Cir. 2023) (quoting *Kingsley*, 576 U.S. at 396–97).  "To state a claim of deliberate indifference to a medical need . . . a pretrial detainee must plead that (1) they had a medical condition or injury that posed a substantial risk of serious harm; (2) the defendant intentionally, knowingly, or recklessly acted or

failed to act to appropriately address the risk that the condition posed; (3) the defendant knew or should have known (a) that the detainee had that condition and (b) that the defendant's action or inaction posed an unjustifiably high risk of harm; and (4) as a result, the detainee was harmed." *Id.* at 611.  This means that a pretrial detainee "no longer has to show that the defendant had actual knowledge of the detainee's serious medical condition and consciously disregarded the risk that their action or failure to act would result in harm."  *Id.*

To prevail on his claim, Hammock must show that Dr. Barnes' action or inaction was objectively unreasonable in connection with the treatment of his sciatica.  Dr. Barnes has presented evidence in support of her Motion for Summary Judgment demonstrating that her actions and the actions of other medical care providers was not objectively unreasonable.[5]

Hammock's September 20, 2019, medical history report includes lower back pain due to a gunshot wound in 1998 with the bullet still in place and associated left leg pain.  ECF 54-7, at 4. He was prescribed Motrin and Baclofen which he received on September 22, 2019.  *Id.* at 6. However, the following day, Hammock refused his medications.  *Id.* at 6–7.  His compliance with the medication was intermittent throughout September, October, and November of 2019.  *Id.* at 6– 29.  When he was seen on October 30, 2019, he requested assignment to the medical tier due in part to the pain from his lower back.  *Id.* at 30.  Hammock was advised that he did not qualify for assignment to the medical tier, and he was prescribed Nortriptyline, an antidepressant and nerve pain medication.[6]  *Id.*

On December 4, 2019, Hammock complained of sciatic pain and requested an increase in the dosage for his pain medication and again asked to be housed on the medical tier.  *Id.* at 37.  In

---

[5] Hammock was a pretrial detainee through the filing of the complaint on February 28, 2022.  *See* ECF 41, at 2.

[6] *See* https://www.ncbi.nlm.nih.gov/pmc/articles/PMC6485407/ (last viewed Jan. 25, 2024).

an addendum to the nurse's note, Dr. Christopher Kircher noted that Hammock is "malingering in order to be placed in 2P for 'safehaven'" and that he "already explained to [Hammock] that he needs to speak to custody if he is having issues with certain [inmates]." *Id*. Hammock's intermittent compliance with medications prescribed for his various conditions continued through the month, *id*. at 39, 45, 47, and extended into January and February of 2020, *id*. at 54–56.

On February 27, 2020, in response to Hammock's complaint that his sciatic pain was an issue, Dr. Barnes changed Hammock's Ibuprofen prescription to one for Mobic, renewed his Tylenol order, increased the Nortriptyline to twice a day, increased his Baclofen dose to three times a day, and added muscle rub. *Id.* at 62. Additionally, Dr. Barnes ordered an x-ray of Hammock's lumbar spine. *Id*. Dr. Barnes made a note dated March 10, 2020, indicating that Hammock had reported his pain had improved with the medication and the x-ray of his lumbar spine showed no acute findings. *Id*. Hammock again reported his lower back pain had improved on April 2, 2020, with the addition of daily lower back exercises. *Id*. at 63.

Although records of medication administration during the months of April, May, and June 2020 indicate several occasions where Hammock either missed medication or refused, very few of those instances were refusals for medication to treat his lower back pain. ECF 54-8, at 1–9, 10–32.

On August 20, 2020, Hammock was seen by a Nurse Practitioner for his complaint of sciatica. *Id.* at 33. He reported that the Tylenol and Motrin did not work "in the past," that the pain keeps him up at night when it worsens, and that he took oxycodone for pain before he was incarcerated. *Id*. To address his pain, Hammock was prescribed Mobic 7.5mg twice a day and Robaxin (aka Methocarbamol) 750mg twice a day. *Id*. He was also advised to avoid prolonged

sitting or standing and to do stretching exercises as tolerated.  *Id*.  Through the remainder of 2020, Hammock denied any medical complaints during segregation rounds.  *Id*. at 35–36.

When Hammock reported on January 5, 2021, that his chronic sciatic pain was not addressed by the medication he received and his left leg was swollen, the Nurse Practitioner started him back on Baclofen 20mg twice a day and ordered TED stockings to address his swollen leg. ECF 54-9, at 18.

On February 9, 2021, Hammock reported to the Nurse Practitioner that his right leg sciatica pain was keeping him from moving to get his medication every time he needs it.  *Id*. at 30.  When he was seen two days later for his complaint that his pain medication was not effective, his medication compliance was at 60%.  *Id*.  Hammock was advised to stay hydrated, his order for a lower bunk was continued, and his prescription for Baclofen was continued.  *Id*.

On May 19, 2021, Dr. Barnes saw Hammock for, among other things, a complaint of lower back pain.  *Id.* at 41.  At that time Hammock stated that he was not taking his morning medications because they did not help his pain, but reported some of his pain was relieved through use of a back brace he had been provided.  *Id*.  Because Hammock was not on an anti-inflammatory, Dr. Barnes prescribed Mobic.  *Id*.

On August 4, 2021, Hammock reported receiving prescribed muscle rub for his lower back pain and that it was "very effective."  ECF 54-10, at 30.  By November 24, 2021, Hammock's medication compliance was at 84%.  ECF 54-9, at 55.  His compliance with prescribed medication remained sporadic through the end of 2021 into the first few months of 2022.  ECF 54-10, at 30–64; ECF 54-11.  The records do not indicate that Hammock had any further significant complaints regarding his back.

Hammock has not offered any evidence to refute these facts.  Applying the objective standard outlined above to the undisputed facts of this case, it is clear that Dr. Barnes is entitled to summary judgment in her favor as the care rendered did not amount to an unjustifiably high risk of harm and there is no evidence that her actions did not appropriately address Hammock's condition.  Accordingly, summary judgment will be granted in Defendant's favor on this claim and the case shall be closed.

## V.      CONCLUSION

For the foregoing reasons, Defendant's Motion to Seal (ECF 55), and Plaintiff's Motions for Default Judgment (ECF 57), for Contempt (ECF 58), and for Representation (ECF 60) are DENIED.  Defendant's Motion for Summary Judgment  (ECF 54) is GRANTED.  A separate Order follows.

Date: <u>April 1, 2024</u>                              <u>                      /s/                      </u>
                                                            Brendan A. Hurson
                                                            United States District Judge